IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCES B. CUTRI, | : | CIVIL ACTION NO. **3:CV-06-2016** |
| | : | |
| Plaintiff | : | (Judge Conaboy) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security Disability case pursuant to 42 U.S.C. §§ 405(g). The Plaintiff, Francis

B. Cutri, is seeking review of the decision of the Commissioner of Social Security ("Commissioner")

which denied her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security

Act (Act), 42 U.S.C. §§ 401-433.

## I.  PROCEDURAL HISTORY.

The Plaintiff filed an application for DIB on June 30, 2004, alleging disability since January

12, 2003, due to lower back pain, diabetes and depression.  (R. 16, 18).  Her claim was denied,

and a timely request for a hearing was filed. (R. 16).  A hearing was conducted before an

Administrative Law Judge ("ALJ") on December 8, 2005.  (R. 432).  Plaintiff, who was represented

by counsel, testified.  (R. 432).  A Vocational Expert ("VE") also testified.  (R. 449-51).  Plaintiff was

denied benefits pursuant to the ALJ's decision of January 10, 2006. (R. 16-22).  The ALJ issued a

decision finding that Plaintiff was not disabled under the Act.  (R. 22).

The Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 8).  Said

request for review was denied on September 21, 2006, thereby making the ALJ's decision the "final

decision" of the Commissioner.  42 U.S.C. § 405(g). That decision is the subject of this appeal. (R. 16-22).[1]  In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 6 & 7).

## II. STANDARD OF REVIEW.

When reviewing the denial of Social Security Disability Insurance benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).   It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

---

[1]There is no dispute that the Plaintiff meets the non-disability requirements for DIB benefits and was insured for benefits until December 31, 2006. (R. 16).

specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999);  *Sassone v. Soc. Sec. Comm.*, 165 Fed. Appx. 954 (3d Cir. 2006)(Non-Precedential).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work.  *See* 20 C.F.R. § 404.1520(e), 416.920(e).  The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work.  *Plummer*, 186 F.3d at 428.  Then the burden of proceeding shifts to the

3

Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id.*

The ALJ proceeded through the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 22).  At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful work activity since January 12, 2003, approximately eight months after straining her back at work.  (R. 18).  At step two, the ALJ concluded from the medical evidence that the Plaintiff's following impairments were severe: degenerative disc disease at the L5-S1 level with disc bulging at the L4-L5 and L5-S1 level and non-insulin dependent diabetes mellitus.  (R. 18).  The ALJ concluded that the Plaintiff's mental depression was not a severe impairment.  (R. 18).

At step three, the ALJ concluded from the medical evidence that the Plaintiff's severe spine impairments were not severe enough, either singly or in combination, to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4.  (R. 19).  The ALJ did not determine whether the Plaintiff's severe impairment of non-insulin dependent diabetes, either singly or in combination with the Plaintiff's spine impairments, met or medically equaled a listed impairment.  At step four, the ALJ found that Plaintiff's allegations regarding her limitations were not fully credible.  (R. 20).  Finally, at step five, the ALJ found that the Plaintiff retained the residual functional capacity (RFC) "to perform sedentary

work activity in a job that would involve no more than 1, 2 or 3 step procedures, and would not require the worker to interact with the general public, or to work closely with other people, such as in a team work environment." (R. 20).

The ALJ concluded that, although the Plaintiff's RFC precluded her from performing past relevant work, a significant number of jobs existed in the national economy that the Plaintiff could perform.  (R. 20-21).  The ALJ relied on the testimony of the VE.  (R. 20-21).  Such jobs included work as a small parts assembler, a stationary surveillance monitor, or a switchboard operator/telephone operator.  (R. 21).  The ALJ demonstrated, through the VE's testimony, that such jobs existed in significant numbers in the national economy, as required by 20 C.F.R. §§ 404.1520(f) and 416.920(f), by listing their numbers.  (R. 21).  Thus, the Plaintiff was found to be not disabled within the meaning of the Social Security Act.  (R. 22).

The relevant time period for this case is January 12, 2003 (alleged onset date of disability) (R. 16), through January 10, 2006 (date of ALJ's decision).  (R. 16-22).

## IV.  DISCUSSION.

This appeal involves the denial of the Plaintiff's application for DIB.  (R. 16-22).  The Plaintiff filed her application for DIB in October 2003, which was denied in January, 2006, by the decision of an ALJ.  (R. 22).  The issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled.

The ALJ found that the Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 22).  Therefore, the ALJ found that the Plaintiff is not disabled under the Act.  (R. 22).  The Plaintiff argues that the ALJ erred

5

by failing to find that she does not have an impairment that meets or medically equals a listed impairment. (Doc. 6, p. 4). The Plaintiff contends that the ALJ erred by finding that she does not have an impairment that, in combination, meets or medically equals a listed impairment. (*Id.* p. 10). The Plaintiff claims that the ALJ erred by failing to find that her depression was a severe impairment. (*Id.*). The Plaintiff argues that the ALJ erred in determining that she could perform sedentary work. (*Id.* at 6). The Plaintiff opines that the ALJ would have found her unable to perform even sedentary work if the ALJ had given proper weight to the opinions of her treating physicians. (*Id.* at 6-9). Finally, the Plaintiff argues that the additional evidence submitted to the Appeal's Council warrants a remand action. (*Id.* at 9).

### A. Background

The Plaintiff was born on October 24, 1959. (R. 21). She was 42 years old at the time of the alleged onset date. (R. 21). Thus, the Plaintiff is a younger individual under the Regulations. *See* 20 C.F.R. § 404.1563. She has an eighth grade education and worked as kitchen helper, sewing machine operator, house painter and as a nurse's aide. (R. 20). The Plaintiff has not worked since January of 2003, approximately eight months after she reportedly strained her back at work. (R. 52, 165. 167, 209).

The Plaintiff was treated by Dr. Cruciani for her spine impairments. (R. 215). The Plaintiff began seeing Dr. Cruciani in December of 2002. (R. 215). On February 20, 2003, Dr. Cruciani noted that the Plaintiff stated she was not doing any better, and had trouble doing the dishes. (R. 214). During that same visit, Dr. Cruciani noted a negative straight leg raising test. (R. 214). Despite the negative straight leg raising test, Dr. Cruciani stated that he felt that the Plaintiff is not

6

"capable of any gainful employment especially with her having to bend and stoop at various times."

(R. 214).  On June 11, 2003, an MRI, ordered by Dr. Cruciani, was performed on the Plaintiff's

lumbar spine region.  (R. 211).  The MRI showed "[n]o evidence of disc herniation or central canal

stenosis," "[s]evere degenerative disc disease [at] L5-S1 with slight retrolisthesis of L5 on S1 and

bilateral neural foraminal narrowing," as well as "[d]isc bulges at L4-5 and L5-S1," which was

unchanged from a prior MRI.  (R. 212).

The most recent MRI of record, ordered by Dr. Gillick, was performed on March 16, 2005.

(R. 369).  The MRI revealed:

> 1.  Diffuse posterior disc bulge at L4-5 with superimposed central disc
> protrusion, slightly more prominent than on the prior study.
> 2.  Severe degenerative disc disease, L5-S1, with a disc bulge as well as
> question of a small left paracentral disc protrusion.  Findings have not
> changed significantly allowing for differences in technique.
> 3.  Disc bulge at L3-4, unchanged.

(R. 370).

Dr. Gillick reviewed the MRI on April 4, 2005.  (R. 373).  Dr. Gillick noted:

> Physical exam is unchanged.  She [Plaintiff] has tenderness in the low
> lumbar midline, pain with any movement, including flexion, extension or
> rotation which increases the pain.  Straight leg raising is negative on the
> right, slightly positive on the left.  Motor and sensation of her lowers
> [extremities] are normal.  Reflexes are +1 at the left Achilles, and +2 on
> the right.  Otherwise, equal. . .Review of her MRI shows some posterior
> disc bulge and degeneration at L4-5 which is increased from prior but she
> has severe degenerative disc disease at L5-S1. . .She was not looking for
> surgery and was happy to be reassured that there does not appear to be
> a significant change.  We will follow through with the current treatment
> plan.

(R. 373).

On October 15, 2003, the Plaintiff had a CT scan on her lumbar spine, ordered by Dr.

Gillick.  (R. 318).  The findings of the CT scan are as follows,

> . . . disc narrowing noted at L5-S1 with associated vacuum disc
> phenomenon and endplate changes noted.  No compression fractures are
> identified.  There are degenerative changes involving the sacroiliac joints
> bilaterally.
>
> L3-L4: There is mild diffuse disc bulging without evidence of focal disc
> herniation.  There is suggestion of bilateral neural foraminal narrowing,
> right greater than left.  Minimal facet arthrosis is noted bilaterally.
>
> L4-L5: There is mild diffuse disc bulging without evidence of focal disc
> herniation.  Minimal facet arthrosis is noted bilaterally contributing to
> mild bilateral neural foraminal narrowing.
>
> L5-S1: There is mild diffuse disc bulging.  There is moderate bilateral
> neural foraminal narrowing, right greater than left.

(R. 318).

After this CT scan, Dr. Gillick recommended a trial cast "to investigate the effect of rigid immobilization on her spine and potentially help predict results of a spinal fusion." (R. 317).  The cast was applied on January 12, 2004.  (R. 375).  On August 30, 2004, Dr. Gillick noted that ". . . she was in a trial cast and did not have a positive experience in a trial cast. . . .[w]e are not thinking surgery but rather symptomatic and supportive treatment." (R. 376).  On this visit Dr. Gillick also noted a negative straight leg raising test and that her lower extremity motor and sensory exams were intact.  (R. 376).

The Plaintiff was also treated by Dr. Cronkey between July of 2002 and December of 2002.  (R. 161-64).  The Plaintiff began seeing Dr. Cronkey about her lower back pain approximately three months after she injured her back at work while lifting a patient.  (R. 164).  Dr. Cronkey noted that

the Plaintiff had been seen by Dr. Kondash, who ordered a series of imaging tests on her back.[2] (R. 164).  Dr. Kondash also prescribed Vicodin, which was "taken away" before the Plaintiff had returned to light duty at work.  (R. 164).  Dr. Cronkey also noted that she was currently permitted to do light medium work, and was able to do so.  (R. 164).  Also on that first visit, Dr. Cronkey noted that although there was degenerative disc disease at L5-S1, the Plaintiff retained full right and left lateral bending extension.  (R. 164).  The Plaintiff also had a negative sitting stretch reflex of the lower left extremity.  (R. 164).

On August 13, 2002, Dr. Cronkey suggested that the Plaintiff undergo epidural injections at the pain clinic at the Community Medical Center ("CMC"), which the Plaintiff refused to do.  (R. 163).  Dr. Cronkey noted that the Plaintiff would continue with her modified duties at work.  (R. 163).  On October 15, 2002, Dr. Cronkey noted that the Plaintiff sustained a second work related injury to her right thumb.  (R. 162).  The Plaintiff claimed that she suffered a hyperextension of her thumb while helping a patient.  (R. 162).  Dr. Cronkey noted that the X-rays of her thumb were negative, and recommended 6 weeks of Vioxx.  (R. 162).  The Plaintiff was still able to work.  (R. 162).  On October 21, November 4, and November 25, of 2002, the Plaintiff continued to complain of right thumb pain.  (R. 161-62).  Dr. Cronkey continued to note that the Plaintiff was able to work, despite her lower back and right thumb pain.  (R. 161-62).

On August 6, 2002, the Plaintiff underwent an EMG ordered by Dr Cronkey.  (R. 144).  The EMG revealed:

> Mildly abnormal study.  Findings are suggestive [of] a mild chronic lower

---

[2] No medical records from Dr. Kondash are found in the record.

lumbosacral radiculopathy on the left side, but this will need to be correlated clinically.  Follow up studies may be warranted depending on the course of symptomatology.

(R. 144).

On August 28, 2002, Dr. Cronkey reviewed the EMG, noting that all of the anti-inflammatory medications prescribed to the Plaintiff had failed and that she still refused to undergo epidural injections at the CMC pain clinic.  (R. 163).

On June 2, 2003, Dr. Feinstein conducted an Independent Medical Examination ("IME") for the Plaintiff's Worker's Compensation claim.  (R. 185).  Dr. Feinstein had seen the Plaintiff on December 5, 2002, for a prior IME.  (R. 165).  On the June 2003 evaluation, Dr. Feinstein noted that the Plaintiff had a mild limp to the lower left extremity, with a mildly positive straight leg raising test in the left leg, and a negative in the right.  (R. 188).  Dr. Feinstein stated that there was no pain to internal or external rotation of the right or left hip radiating to the buttocks, groin, or SI joint regions.  (R. 188).  Also, Dr. Feinstein noted some left buttocks discomfort and mild left paravertabral muscular discomfort to direct palpation, but that "[t]here was no associated spasm with that subjective discomfort."  (R. 188).  Dr. Feinstein stated that "Forward flexion range of motion of the thoracolumbar spine was limited to approximately 70 degrees on a subjective basis with no objective involuntary muscle spasm to confirm that subjective limitation."  (R. 188).

Dr. Feinstein indicated that the Plaintiff's deep tendon reflexes were normal at the knees and ankles bilaterally, and that the Plaintiff's motor power was intact.  (R. 189).  Next, Dr. Feinstein observed that, "Trendelenburg's Test was normal in both lower extremities and. . .[the Plaintiff] was able to balance her entire body weight first on her right lower extremity and then on her left lower

extremity." (R. 189). In summary, Dr. Feinstein noted that the Plaintiff's physical examination "indicates an element of low grade lumbar radiculopathy that would be consistent with spinal stenosis and degenerative disc disease." (R. 189). Finally, Dr. Feinstein stated that the Plaintiff has had conservative care, and is currently on too much medication. (R. 189).

Dr. Feinstein recommended that the Plaintiff be put on an aggressive smoking cessation program, control of her diabetes and hypercholesterolemia, and weight loss. (R. 189). Dr. Feinstein stated that these four factors, if unchanged, would prevent her form healing or recovering. (R. 189). At the end of his evaluation, Dr. Feinstein documented that the Plaintiff is capable of light or sedentary work. (R. 190).

**B. Whether the ALJ erred by finding the Plaintiff does not have an impairment that meets/medically equals a listed impairment**

While there is medical evidence which indicated that Plaintiff had some of the "A" criteria of Listing 1.04[3], such as degenerative disc disease at L5-S1 (R. 320), there is substantial evidence to support the ALJ's decision that the Plaintiff's back condition did not meet or equal Listing 1.04. Plaintiff has the burden of proving that she meets each of the requirements of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Also, an impairment that "manifests only some of those criteria, no matter how severely, does not qualify." *Id*. As discussed by the ALJ, the exams of

---

[3]Listing 1.04 and 1.04A. provide as follows:

1.04 *Disorders of the spine* (e.g., herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 and 1.04A (2002).

Plaintiff's treating physicians did not indicate that the Plaintiff met or equaled the stated musculoskeletal listing.  Nor is there any other evidence in the record which demonstrates that Plaintiff met Listing 1.04, *et seq*.

As stated above, we find substantial evidence to support the ALJ's determination that the Plaintiff's spinal impairments did not meet listing 1.04(A), (B), or (C).  (R. 19).  The ALJ found that the Plaintiff's spinal impairments did not meet listing 1.04(A) because there was no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and a positive straight leg raising test.  (R. 19).  The ALJ also found that the Plaintiff's spinal impairments did not meet listing 1.04(B) because there was no evidence of spinal arachnoidities, which is manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours.  (R. 19).  Finally, the ALJ found that the Plaintiff's spinal impairments did not meet listing 1.04(C) because there was no evidence of lumbar spinal stenosis resulting in pseudoclaudication manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively.  (R. 19).  Thus, the ALJ found that the Plaintiff did not have all of the requirements of Listing 1.04, such as motor and sensory loss, or loss of strength in her lower extremities.  We find that the medical record, as discussed in detail above, provides substantial evidence to support this finding of the ALJ.

The Plaintiff argues that her spinal impairments meet the criteria for listing 1.04(A).  (Doc. 6, p. 4).  To support this argument, the Plaintiff points to a "positive" leg raising test done by Dr. Feinstein.  (*Id*. at 5).  The leg raising test done by Dr. Feinstein, however, was "mildly positive in the

left lower extremity at a full 90 degrees of elevation of the leg, and was entirely negative in the right lower extremity." (R. 188).  The Plaintiff also claims that Dr. Cruciani found a positive straight leg raise in April of 2002.  (Doc. 6, p. 5).  Dr. Cruciani only noted a "mild straight leg raise."  (R. 407).  The Plaintiff also points to a positive straight leg raise test done by Dr. Gillick.  (Doc. 6, p. 5).  On March 23, 2005, Dr. Gillick noted, "[s]traight leg raising is negative on the right, slightly positive on the left."  (R. 373).  On that same day, Dr. Gillick also noted that "Motor and sensation of her lowers [extremities] are normal."  (R. 373).

There is substantial evidence of negative straight leg raising tests throughout the record.  On February 20, 2003, Dr. Cruciani noted a negative straight leg test.  (R. 214).  On September 24, 2003, Dr. Gillick also noted a negative straight leg test and no decreased sensation.  (R. 320).  On April 4, 2004, Dr. Besen, during a disability examination, noted, "[i]n the supine position to about 30 degrees, she does have some evidence of a positive [straight leg raise] but sitting seems fine. . . [r]ight leg is fine. . . [b]oth supine and sitting for a straight leg raising."  (R. 328).  No where in the medical record had any physician found evidence of compromise of a nerve root, thus, the Plaintiff's condition did not meet the threshold requirement of listing 1.04.  (Cite to 1.04).

Contrary to the Plaintiff's contention (Doc. 6, p. 2-3), the ALJ properly discussed the objective medical findings as they related to Listing 1.04.  There is substantial evidence to support the ALJ's findings that the Plaintiff's spinal impairments were severe, but that they did not meet or medically equal listing 1.04, and that Plaintiff had the RFC to perform sedentary work.

### C. Whether the ALJ erred by finding that Plaintiff does not have an impairment that, in combination, meets/medically equals a listed impairment

_____The plaintiff next argues that the ALJ failed to consider her spinal impairments, diabetes and

13

depression in combination.  (Doc. 6, p. 10).  *See* 20 C.F.R. § 404.1523 (stating that the Commissioner will consider the combined effect of all of the claimant's impairments).  The Plaintiff contends  that the ALJ erred by not determining if the Plaintiff's diabetes met or medically equaled a listed impairment.  (Doc. 6, p. 10).  We agree with the Plaintiff that the ALJ erred in failing to determine whether her severe impairment of diabetes met or medically equaled Listing 9.08.

In *Burnett v. Commissioner of Soc. Sec. Admin.*, the Court found that an ALJ cannot merely state "a summary conclusion that [the Plaintiff's] impairments did not meet or equal any listed impairment, without identifying  the relevant listed impairments, discussing the evidence, or explaining [his or her] reasoning." 220 F.3d 112, 119 (3d. Cir. 2000)(quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)) (Internal Quotations Omitted).  The *Burnett* Court found that such a conclusory statement was beyond judicial review.  (*Id*.).

Here, the ALJ simply stated that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Supart P, Appendix 1, Regulaitons No. 4." (R. 19).  Next, the ALJ explained why the Plaintiff's spinal impairments did not meet Listing 1.04. (R. 19).  The ALJ never discussed the Plaintiff's diabetes, which the ALJ found to be a severe impairment in the preceding step. (R. 16-22).  Thus, we shall recommend that the Plaintiff's case be remanded with respect to this issue for a determination by Defendant of whether the Plaintiff's severe impairment of diabetes meets or medically equals a listed impairment.[4]  Once this determination is made, the ALJ should then consider the Plaintiff's

---

[4]  On remand, we also recommend that the ALJ to consider Dr. Feinstein's IME completed on May 19, 2005.  The Plaintiff argues that in this IME, Dr. Feinstein opines that she is capable of only part-time work. (Doc. 6, p. 9).  The Plaintiff points to R. 182, a work

impairments in combination.

**_____D.   Whether the ALJ erred by finding the Plaintiff's depression was not a severe impairment**

The Plaintiff argues that the ALJ erred in failing to find that her depression was a severe impairment.  (Doc. 6, p. 8).  Step two of the ALJ's sequential evaluation is a *de minimis* screening threshold to dispose of groundless claims.  *Newell v. Commissioner of Social Security*, 347 F.3d 541, 547 (3d. Cir. 2003).  The *Newell* Court stated that "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.' *Id*. at 546 (citing SSR 85-28, 1985 SSR LEXIS 19, at *6-7).

The "severity regulation" requires a claimant to show that she has an "impairment. . .which significantly limits [his or her] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  The claimant bears the burden of production and persuasion.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  Here, the ALJ found that the Plaintiff did not meet her burden with respect to her depression.  (R. 14-15).

The ALJ adopted the Psychiatric Review Technique form assessment completed on May 20,

---

capabilities form filled out by Dr. Feinstein, as evidence that Dr. Feinstein recommends only part time work for the Plaintiff.  (Doc. 6, p. 9).  However, at R. 382, Dr. Feinstein releases the Plaintiff for full time work as of May 19, 2005, but then indicates that the Plaintiff is to work only 25-30 hours per week.  We do not decide at this time whether the May 19, 2005 IME of Dr. Feinstein is new evidence.  We note that the Plaintiff does not offer an explanation as to why this IME was not submitted to the AlJ.  Plaintiff did submit this IME to the Appeals Council, but the Appeals Council found this information did not provide a basis of changing the ALJ's decision.  (R. 9).

2004, by Dr. J. J. Kowalski, a medical consultant to the Disability Determination Service.  (R. 18, 330).  The ALJ adopted this assessment because he found that this assessment was consistent with, and supported by, the great weight of the medical evidence.  (R. 18).  The ALJ found that the Plaintiff's depression was not an impairment that would significantly affect her ability to perform basic work related tasks, and thus, was not a severe impairment.  (R. 18).  Dr. Kowalski found that the Plaintiff's depression does not require restriction of daily activities, does not cause social difficulties, or episodes of decompensation.  (R. 340).  Dr. Kowalski also noted that the Plaintiff has mild difficulties in maintaining concentration.   (R. 340).

We find substantial evidence in the record to support the ALJ's determination that the Plaintiff's depression is not a severe impairment, in that it does not significantly limit her physical or mental ability to do basic work activities.  For instance, on March 31, 2004, Dr. Patel indicated that the Plaintiff's depression was controlled with Zoloft and that she was not currently receiving any formal psychiatric treatment. (R. 321-22).  Within the same assessment, Dr. Patel indicated that the Plaintiff had no difficulty understanding and remembering simple instructions, and had no difficulty carrying out short, simple instructions.  (R. 324).  Dr. Patel indicated that the Plaintiff had only slight difficulty understanding and remembering detailed instructions, and slight difficulty in carrying out detailed instructions. (R. 324).  Also, Dr. Patel noted that the Plaintiff had no difficulty interacting appropriately with the public, and had only slight difficulty interacting with supervisors and co-workers.  (R. 324).  Finally, Dr. Patel stated that the Plaintiff had only slight difficulty

responding appropriately to work pressures and to changes in a routine work setting.[5]  (R. 324).

We find that Dr. Kowalaski's assessment is consistent with that of Dr. Patel.  As stated, we find substantial evidence to support the ALJ's determination that the Plaintiff's depression was not a severe impairment.

### E. Whether the ALJ erred  in determining that the Plaintiff could perform sedentary work

The Plaintiff contends that the ALJ erred in not giving controlling weight to the opinion of Dr. Cruciani.  (Doc. 6, p. 7).  The Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310  (3d Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989);  *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988);  *Kent*, 710 F.2d at 115.

---

[5]  Indeed, as discussed above, the ALJ included limitations in his RFC finding to accommodate Plaintiff's mental impairment, such as limitations on the step procedures and interaction with other people.  (R. 20).

*Id*. at 317-18. The ALJ is required to evaluate every medical opinion received. 20 C.F.R.

§ 404.1527(d). Although he must consider all medical opinions, the better an explanation a source

provides for an opinion, particularly through medical signs and laboratory findings, the more weight

[the ALJ] will give that opinion. 20 C.F.R. § 404.1527(d)(3). While treating physicians' opinions

may be given more weight, there must be relevant evidence to support the opinion. 20 C.F.R. §

404.1527(d). Automatic adoption of the opinion of the treating physician is not required. *See*

*Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

The Plaintiff argues that the ALJ erred in not giving controlling weight to Dr. Cruciani's

opinion. (Doc. 6, p. 7). An opinion by Dr. Cruciani discussing the Plaintiff's functional limitations

is not found in the record. The Plaintiff argues that the ALJ rejected Dr. Cruciani's opinion "without

identifying any contradictory medical evidence in the record," and that the ALJ "refers only to a

hand-written note from Dr. Cruciani stating that Plaintiff was unable to work." (Doc. 6, p. 8). The

Plaintiff states that the ALJ also should have considered a deposition transcript from Dr. Cruciani,

which was taken for worker's compensation purposes. (Doc. 6, p. 9). We find that the ALJ did

consider this transcript, as the ALJ considered all of the medical records discussed by Dr. Cruciani

in the transcript. (19-20).

Contrary to the Plaintiff's contentions, Dr. Cruciani's determination that she was unable to

work, written on a script pad, is not substantial evidence. Instead, the ALJ relied upon the opinions

of Dr. Feinstein, who conducted two Independent Medical Examinations, which indicated that the

Plaintiff was capable of sedentary work. (R. 20). The ALJ then rejected, in part, the Physical Residual Functional Capacity Assessment made by Dr. Oliver Finch, the medical consultant to the Disability Determination Service. (R. 20). The ALJ disagreed with Dr. Oliver's assessment because Dr. Oliver stated that the Plaintiff was able to perform a full range of light work activity. (R. 20). The ALJ determined that the Plaintiff is only capable of a limited range of sedentary work activity, *i.e.*, small parts assembler, stationary surveillance monitor, or switchboard operator/telephone operator. (R. 20-21).

Moreover, the opinion of Dr. Cronkey, a treating physician, also supports the ALJ's decision that the Plaintiff is capable of doing sedentary work. (R. 163, 164). Dr. Cronkey saw the Plaintiff on July 23, 2002, and noted that the Plaintiff was able to continue her work at a personal care home and was doing so successfully. (R. 163). On August 27, 2002, Dr. Cronkey said that the Plaintiff would continue with her modified duties at her job. (R. 164). Dr. Cronkey saw the Plaintiff again on October 15, 2002, where he noted that the Plaintiff was "still able to continue her work activities." (R. 162). Dr. Cronkey recommends that the Plaintiff continue working on November 4 and November 25 of 2002. (R. 161).

We find substantial evidence to support the ALJ's decision to reject Dr. Cruciani's opinion that the Plaintiff was no longer able to work, and to accept, in part, Dr. Feinstein's opinion that the plaintiff retained the residual functional capacity to perform work. (R. 20). As stated above, although the ALJ gave great weight to Dr. Feinstein's IME, he did not accept Dr. Feinstein's opinion in full, *i.e.* the ALJ did not find that the Plaintiff could engage in a wide range of light exertion; rather, the ALJ found that the Plaintiff was only capable of sedentary work. (R. 20).

## V.  Recommendation.

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal of the ALJ's decision be **DENIED** with respect to all claims, except for the Plaintiff's claim that the ALJ failed to determine whether her severe impairment of diabetes met or equaled a Listing.  On this one issue, we recommend that this case be remanded to the Defendant for a determination.

<u>s/ Thomas M. Blewitt</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 21, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANCES B. CUTRI,                    :        CIVIL ACTION NO. **3:CV-06-2016**
                                     :
   Plaintiff                         :         (Judge Conaboy)
                                     :
   v.                                :        (Magistrate Judge Blewitt)
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of                      :
Social Security,                     :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 21, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

 s/ Thomas M. BLewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 21, 2007**